J-A18032-18

2018 PA Super 331

| MARIANA KOZIAR, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NEAL T. RAYNER AND ANDREA | : | |
| RAYNER, | : | |
| | : | |
| Appellants | : | No. 3883 EDA 2017 |

Appeal from the Order Entered October 31, 2017
in the Court of Common Pleas of Delaware County
Civil Division at No(s):2014-009389

BEFORE:  STABILE, J., STEVENS, P.J.E.* and STRASSBURGER, J.**

OPINION BY STRASSBURGER, J.:          **FILED DECEMBER 07, 2018**

Neal T. Rayner and Andrea Rayner (collectively, the Rayners) appeal from the October 31, 2017 order, which granted the motion for post-trial relief filed by Mariana Koziar (Koziar).  Upon review, we reverse.

We set forth the following facts based upon the testimony presented at trial.[1]  On November 13, 2012, Koziar was working as a house cleaner for the Universal Group[2] and had been assigned to clean the Rayners' home

---

[1] At trial, Koziar testified with the assistance of a certified translator.  Koziar, born in the Ukraine, spoke "Ukrainian[,] Russian[,] and [a] little bit of English[.]" N.T., 9/26/2017, at 13-14.

[2] Prior to trial, the Rayners sought to join Universal Group as an additional defendant.  Motion for Leave to Join Universal Group as an Additional Defendant, 7/27/2016.  This request was granted by the trial court and the Rayners filed a joinder complaint.  Order, 8/22/2016; Joinder Complaint, 9/2/2016. However, prior to trial, after consideration of the Universal
*(Footnote Continued Next Page)*

\* Former Justice specially assigned to the Superior Court.

\*\* Retired Senior Judge assigned to the Superior Court.

with two co-workers. N.T., 9/26/2017, at 13, 23-24. She had not been to the Rayners' home prior to that day. *Id.* at 24. Koziar testified that she and her co-workers arrived at the Rayners' home at 5:00 p.m. and finished cleaning around 7:00-7:15 p.m.[3] *Id.* at 23, 28.

When she and her co-workers were finished, she followed her co-workers through the laundry room and into the attached three-car garage. She testified that she was the last one to leave the home, following her co-workers since she "really didn't know much about where to go and how to go." *Id.* at 29. It was then that she fell and injured her ankle. Koziar testified as follows.

> I was leaving the laundry room which was [l]it. When the door to the laundry room closed there was no light. Since I saw the [co-workers] in front of me I followed them because the garage door was open. As I was walking out[ of the second garage door,] stepping outside the garage[,] there was like a lip there. I tripped and fell.

*Id.* Koziar testified that there were no lights inside or in front of the garage and since it was her first time at the Rayners' home she "didn't know where the switches were and [] was not looking for them." *Id.* at 30. After her fall, Koziar went "to the emergency room at Nazareth Hospital[.]" *Id.* at 98.

_____

(Footnote Continued) —————————
Group's preliminary objections, the trial court dismissed the joinder complaint with prejudice. Order, 5/1/2017.

[3] Koziar recalled that when she arrived it was still light outside, although she was unsure if it was still light out at the time she was leaving. *Id.* at 24, 28.

When she was in the emergency room it was reported that Koziar tripped by the garage entrance and fell. *Id.* at 100. The next day, Koziar met with Dr. James V. Mackel, Jr. about her injuries, who recorded that Koziar "was walking on the street and she inverted her left ankle." *Id.* at 96. Koziar returned to see Dr. Mackel again on November 15, 2012, where Dr. Mackel noted Koziar "gave [him a] history that was at a variance with the history [he] was given yesterday. [He] was told that a garage door [struck] her." *Id.* at 98-99. As a result of her fall, Koziar suffered injures to her left elbow and left leg. *Id.* at 35-36. The injury to her left leg, specifically, her left ankle, required surgery, which was performed by Dr. Mackel. *Id.* at 44-45.

On October 21, 2014, Koziar filed a premises liability/slip and fall complaint against the Rayners alleging, *inter alia*, negligence. A jury trial occurred that developed the aforementioned facts.[4] In addition, Mr. Rayner

---

[4] Koziar also presented the testimony of her medical expert, Dr. Derek Donegan, whose videotaped deposition was played for the jury in lieu of live testimony at trial. Dr. Donegan, an orthopedic surgeon, met Koziar in 2015. *Id.* at 141, 147. Koziar presented "with a history of having a [left] ankle injury in the form of an ankle fracture for which she has surgery in the past." *Id.* at 147. Koziar reported to Dr. Donegan that she was continuing to experience discomfort from her surgery. *Id.* at 149-50. Based on his examination, Dr. Donegan testified that the ankle was healed, but "she could potentially benefit from having the hardware [in her leg] removed." *Id.* at 158. Surgery was performed to remove the hardware on July 13, 2015. *Id.* at 159. Dr. Donegan opined that the injury to Koziar's ankle "was caused by a traumatic event." *Id.* at 169. Dr. Donegan said it would be common for this type of trauma to occur if someone was to "fall" or had "some kind of twisting injury." *Id.* The Rayners did not dispute this medical testimony.

testified. With the use of various photographs, Mr. Rayner explained the condition of the driveway and the lighting inside and outside of the garage. N.T., 9/27/2017, at 55-70. Mr. Rayner testified that the "lip" between the garage apron and the garage floor was there prior to the Rayners' purchasing the home, was in good condition, and was uniform across all three garage doors. *Id.* at 71-72. Mr. Rayner testified that he never had any issue with the area between the blacktop and the garage apron and if he would have, he would have "addressed it very quickly." *Id.* at 71. Mr. Rayner stated that neither he nor anyone he knew was ever caused "to trip, stumble or fall anywhere in the area of the garage apron." *Id.* at 72.

The Rayners also presented the testimony of Robert Linn, an architect. Mr. Linn testified that in his opinion he did not see any issues with the design or construction of the lip and did not notice "any maintenance concerns relative to what had transpired since the date of construction to the date [he] inspected the property." *Id.* at 138. Further, Mr. Linn testified the illumination in the area where the injury purportedly occurred was sufficient. *Id.* at 139.

On September 28, 2017, the jury returned a verdict, finding that the Rayners were negligent but that their negligence was not a factual cause of the harm suffered by Koziar. N.T., 9/28/2017, at 137-38; Verdict Slip, 9/28/2017, at 1-2 (unnumbered). No objections or exceptions were noted on the record following the reading of the verdict. *Id.* at 142.

On October 10, 2017, Koziar filed a timely motion for post-trial relief in the form of a new trial on damages, or in the alternative, a new trial on all issues. Therein, Koziar averred the jury verdict was "contrary to law and [] against the weight of the evidence." Motion for Post Trial Relief, 10/10/2017, at ¶ 13. The Rayners filed a response on October 30, 2017, opposing Koziar's motion for post-trial relief and disputing Koziar's contention that the verdict was against the weight of the evidence. Specifically, the Rayners argued that the "jury's decision was consistent with the instructions read to the jury by the trial judge[,]" and that the jury was permitted to find that the Rayners were negligent, but that their negligence was not a factual cause of Koziar's injury. The Rayners' Memorandum of Law in Support of its Response to Koziar's Post-Trial Motion, 10/30/2017, at 8-9 (unnumbered).

On October 31, 2017, the trial court issued an order granting Koziar's request for post-trial relief, vacating the jury's verdict in its entirety, and granting a new trial. Order, 10/31/2017, at 3. The trial court determined that such relief was warranted because "once the jury determine[d] the [Rayners were] negligent and only [Koziar's] uncontested medical evidence [was] presented during the trial, the jury's verdict finding [the Rayners'] negligence [was] not a factual cause of any injury or harm sustained by [Koziar] is so disproportionate and inconsistent as to defy logic." *Id.* at 2.

On November 9, 2017, the Rayners filed a motion for reconsideration, which the trial court subsequently denied. The Rayners timely filed a notice of appeal, and both the Rayners and the trial court complied with the mandates of Pa.R.A.P. 1925.

First, we address the Rayners' claim that, because "Koziar failed to object or take exception to any alleged inconsistency in the jury's verdict at the time of trial[,]" Koziar failed to preserve properly the claims alleged in her post-trial motion. The Rayners' Brief at 36-38, *citing* **Criswell v. King**, 834 A.2d 505, 508 (Pa. 2003) ("[W]hen a party seeks to challenge a jury verdict on grounds that the jury returned inconsistent answers to interrogatories, an objection to the inconsistency must be raised when the verdict is rendered."). Essentially, the Rayners view Koziar's post-trial motion as a request for a new trial based on an inconsistent verdict. The Rayners argue that Koziar is barred from seeking relief on this basis because she failed to object to the inconsistent verdict before the jury was dismissed. *Id.* In support, the Rayners emphasize the language used by the trial court in its order granting Koziar's motion. **See** The Rayners' Brief at 36 (citing the trial court's conclusion that the verdict was "'so disproportionate and inconsistent as to defy logic[,]'" and arguing the "trial court did not characterize the issue as one of 'weight of the evidence' but as an issue of verdict inconsistency.") (citation omitted).

- 6 -

In response, Koziar contends she filed a timely post-trial motion "contending specifically that the verdict was 'against the weight of the evidence' concerning causation." Koziar's Brief at 28, *citing* **Criswell**, 834 A.2d. at 512 ("[A] claim challenging the weight of the evidence is not the type of claim that must be raised before the jury is discharged. Rather, it is a claim which, by definition, ripens only after the verdict, and it is properly preserved so long as it is raised in timely post-verdict motions.").

Our review of Koziar's timely filed post-trial motion confirms that Koziar sought relief based upon her contention that the "verdict in this matter [was] against the weight of the evidence." Motion for Post Trial Relief, 10/10/2017, at ¶ 27. As such, based on our holding in **Criswell**, Koziar was not required to raise this issue before the dismissal of the jury, and she preserved properly her weight claim for the trial court's consideration by filing a post-trial motion within ten days of the jury's verdict.[5]

Having concluded that Koziar did not waive her issues, we now address the Rayners' remaining claims, all of which concern the trial court's October 31, 2017 order granting Koziar's post-trial motion. In its order

---

[5] We are aware of the recent opinion of our Supreme Court in **Stapas v. Giant Eagle**, ___A.3d___, 2018 WL 6070787 (Pa. 2018), and find it distinguishable. There, the Court held that Giant Eagle was required to raise its claim that the jury's verdict was "premised on trial errors, correctable before the jury is discharged," before the jury was discharged. **Id.** at *1. In contrast, here the claim is not based on trial errors, but rather is a claim that the verdict is against the weight of the evidence.

granting this motion, the trial court concluded that "once the jury determine[d the Rayners were] negligent and only [Koziar's] uncontested medical evidence [was] presented during the trial, the jury's verdict finding [the Rayners] negligence [was] not a factual cause of any injury or harm sustained by [Koziar was] so disproportionate and inconsistent as to defy logic." Order, 10/31/2017, at ¶ 9. The Rayners argue, *inter alia*, that this conclusion was error. *See* Rayners' Brief at 16-21. We agree.

We address the Rayners' argument using the following standard.

> Trial courts have broad discretion to grant or deny a new trial. The grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings. Although all new trial orders are subject to appellate review, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

*Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121–22 (Pa. 2000) (some citations and quotation marks omitted).

On appeal, the Rayners argue that while they conceded that Koziar suffered an injury based on the medical evidence presented, they did not concede that their negligence was a factual cause of Koziar's injury. Rayners' Brief at 19. Thus, they argue that consistent with the instructions presented to the jury, the jury was allowed to find that the Rayners were negligent, but that the negligence was not a factual cause of Koziar's injuries. *Id.*

Generally, to prevail in a negligence case, a plaintiff must demonstrate the following elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff.

**Schemberg v. Smicherko**, 85 A.3d 1071, 1073–74 (Pa. Super. 2014). Our Supreme Court has defined factual cause "in the 'but for' sense, explaining that a defendant's allegedly wrongful act is a cause-in-fact if the plaintiff proves that the harm he sustained would not have happened, but for the defendant's act."[6]  **Reott v. Asia Trend, Inc.**, 55 A.3d 1088, 1103 (Pa. 2012).

In this case, after closing statements, the trial court charged the jury, providing, *inter alia*, instructions and legal principles for the jury to consider during deliberations. Thus, the jury was apprised of the terms "negligence" and "factual cause" and was presumed to have followed the instructions given. **See Maya v. Johnson & Johnson**, 97 A.3d 1203, 1222 (Pa. Super. 2014) ("The law presumes that the jury will follow the instructions of the court."). As per these instructions, the jury was specifically tasked with determining whether the Rayners were negligent and if so, whether their

---

[6] In this case, the jury instructions given by the trial court accurately reflect the applicable law. **See** N.T., 9/28/2017, at 96-101.

- 9 -

negligence was a **factual cause** of Koziar's injury.[7] The fact that there was uncontroverted medical evidence that Koziar suffered an injury does not relieve Koziar of her burden of proving that it was the negligence of the Rayners that caused her injuries.[8]

We find our decision in ***Daniel v. William R. Drach Co.***, 849 A.2d 1265 (Pa. Super. 2004) instructive. In ***Daniel***, appellants, Musa N. Daniel

---

[7] As part of its jury charge, the trial court submitted a verdict sheet with five questions to the jury. In relevant part, the trial court told the jury that it should consider first,

> [q]uestion one, were [the Rayners] negligent? … If you answer question one yes, go to question two. If you answer question one no,[] Koziar cannot recover, and you should not answer any further questions. Please advise the court officer you have reached a verdict. Turning to the second sheet of the document, at the top of the second sheet is question two. Was the negligence of [the Rayners] a factual cause of any harm to [Koziar]? … If you answer question two yes, go to question three. If you answer question two no, [Koziar] cannot recover, and you should not answer any further questions.

N.T., 9/28/2017, at 117-18. Thus, because the jury found the Rayners were not a factual cause of Koziar's injuries, they did not answer the remaining questions on the verdict form.

[8] In support, the trial court cites ***Womack v. Crowley***, 877 A.2d 1279 (Pa. Super. 2005), ***Burnhauser v. Bumberger***, 745 A.2d 1256 (Pa. Super. 2000) and ***Marsh v. Hanley***, 856 A.2d 138 (Pa. 2004). However, as correctly noted by the Rayners, the court's reliance on these cases is improper because in these cases "there was an agreement of both parties that the Plaintiffs sustained some injury ***as a result of their accidents***. In the instant matter, there was never any such agreement and, in fact, the Rayners vigorously challenged causation and presented ample evidence of other conflicting causes of [] Koziar's injury." Rayners' Brief at 20 (emphasis in original). Moreover, these cases involve the allocation of damages and not the finding of causation related to a defendant's negligence.

and Arafa Daniel (Daniels), filed a complaint against appellee, William R. Drach Co., Inc. (Drach), "for injuries sustained by Mr. Daniel following an alleged slip and fall that occurred on [Drach's] loading dock." *Id.* at 1266. Daniels claimed that "Mr. Daniel slipped on a wet and greasy spot on the floor" that was negligently maintained by Drach. *Id.* The jury found that Drach was negligent, but that this negligence was not a substantial factor in causing Mr. Daniel's injury. *Id.* Daniels filed a post-trial motion, which the trial court denied and, after entry of judgment Daniels appealed.

On appeal, Daniels argued, *inter alia*, that the verdict was against the weight of the evidence because "where a jury has found that a defendant was negligent and the existence of an injury was conceded to and not questioned by [the] defendant, the jury is not permitted to find [that] the defendant's negligence was not a substantial factor in bringing about at least some of [the] plaintiff's injuries." *Id.* at 1268 (citation omitted). This Court disagreed and found that the trial court did not err in denying the Daniels' post-trial relief.

> [W]e do not extrapolate from [the] case law that regardless of the factual circumstances, a finding of negligence combined with an uncontroverted injury automatically requires a finding that the negligence was a substantial factor in causing the accident that caused the injury. Rather, the aforementioned case law is limited to a jury's finding on whether the plaintiff was injured in the accident. [Daniels] have misplaced their reliance, as they are not here arguing about whether Mr. Daniel was injured in the accident, for this issue is not in dispute. Instead, the issue is whether *[Drach's] negligence caused the accident* that resulted in the injury.

- 11 -

* * *

When we view the foregoing evidence in the light most favorable to [Drach] as verdict winner, and the closing argument by [Drach's] counsel, we conclude that the verdict does bear a rational relationship to the evidence presented at trial because the jury could have found Mr. Daniel's testimony relaying [*sic*] his version of the events incredible, and it could have instead accepted [Drach's] theory of defense. It is important to remember that at its crux this case is about a finding on substantial factor, *i.e.,* causation. Appellants argue that because the jury found that [Drach] was negligent, *and Mr. Daniel alleged that such negligence was a substantial factor in causing his injury,* the jury was bound to accept this allegation as the truth. However, in order for a defendant's negligence to be considered a substantial factor in bringing about certain harm to a plaintiff, the negligence must constitute conduct [that] has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense. Clearly, [Drach's] negligence, which is a breach of a duty of care, was its failure to properly maintain its loading dock. But for the jury to also have found that this negligence was a substantial factor in causing Mr. Daniel's injuries, it must have found that this negligence produced the harm. Based on the evidence in this case, the jury could properly have determined that *the negligence did not produce the harm*[.]

*Id.* at 1268-1269, 1273 (quotation marks and some citations omitted;

emphasis in original).

In this case, Koziar provided several different accounts of how the fall

occurred, which the Rayners presented during Koziar's cross-examination.[9]

---

[9] These conflicting accounts included: (1) at trial she testified that she walked out of the second garage door but at a deposition in September 2015, she stated she was not sure which door she exited through; (2) on November 14, 2012, Dr. Mackel recorded that he was informed that Koziar "was walking on the street and she inverted her left ankle[;]" (3) on November 15, 2012, Dr. Mackel noted Koziar "gave [him] history that was at a variance with the history [he] was given yesterday. [He] was told that a
*(Footnote Continued Next Page)*

The jury could have well found that in one or more of the versions of events provided by Koziar, the Rayners were negligent, but ultimately determined that version was not where or how Koziar fell and sustained her injuries.[10] Alternatively, the jury could have found that while the Rayners' were negligent, it was not their negligence, but rather Koziar's own negligence that caused her injuries. *See Daniel*, 849 A.2d at 1279 (concluding that "the jury could properly have determined that the negligence did not produce the harm because what caused Mr. Daniel's injuries was not his slip and fall on an oily and wet surface, but rather his loss of control of an 800 pound drum that had nothing to do with the condition of the floor.") (emphasis in original omitted). *See also S.N.T. Industries, Inc. v.*

---
*(Footnote Continued)*

garage door [struck] her[;]" (4) in the emergency room, Koziar told the treating medical staff that she tripped by the garage entrance and fell but the garage door did not fall on her; (5) in the initial complaint filed in this case she pleaded she fell over debris in the garage that was in her walking path; (6) in sworn interrogatories, Koziar relayed that when she was exiting the garage, she tripped and fell "over an object left" in her "dark walking path[;]" and (7) in her first amended complaint, Koziar pled that "she was caused to trip and fall on the drop-off edge, the concrete garage floor[] slab[] where it was dark and the area was not visible." N.T., 9/26/2017, at 89, 96, 98-99, 100, 102-04, 106).

[10] Koziar dismissed the different accounts given as translation errors, asserting that her trial testimony accurately reflects what occurred. However, it was in the province of the jury to assess the credibility of Koziar and the other testifying witnesses and decide the weight such testimony should be given. *See Martin v. Evans*, 711 A.2d 458, 463 (Pa. 1998) ("Credibility determinations are within the sole province of the jury. A jury is entitled to believe all, part or none of the evidence presented.... A jury can believe any part of a witness' testimony that they choose, and may disregard any portion of the testimony that they disbelieve." (internal quotation marks omitted)).

*Geanopulos*, 525 A.2d 736, 740 (Pa. Super. 1987) ("Where the jury's verdict is supported by testimony which is not inherently improbable nor at variance with admitted or proven fact or with ordinary experience, a new trial will not be granted."). For these reasons alone, we find the trial court erred in granting Koziar's post-trial motion.

However, further compounding its error, in its opinion to this Court, the trial court found that the report generated by the Rayners' medical expert, Dr. Armando A. Mendez,[11] who did not testify at trial and whose report was not entered into evidence, was a judicial admission. Trial Court Opinion, 2/13/2018, at 5-7. The trial court opined that the Rayners "made the strategic decision not [to] present the expert medical testimony of" Dr. Mendez because, based on the report, the Rayners "would have to concede some injury" occurred. *Id.* at 7.

Not only do we find Dr. Mendez's report not relevant as it relates to the issue of causation, the report is not a judicial admission. A judicial admission

> must be a clear and unequivocal admission of fact. Judicial admissions are limited in scope to factual matters otherwise requiring evidentiary proof, and are exclusive of legal theories

---

[11] Briefly, Dr. Mendez, hired by the Rayners, met with Koziar in anticipation of trial. Based upon his review of the medical documentation and evaluation of Koziar, Dr. Mendez authored an expert report in which he stated, *inter alia*, that Koziar "sustained a fracture of the left lateral malleolus with mild lateral subluxation of the talus on" November 13, 2012. Memorandum in Support of Koziar's Motion for Post-Trial Relief, Exhibit A, at 4. This report was not presented to the jury at trial.

and conclusions of law. The fact must have been unequivocally admitted and not be merely one interpretation of the statement that is purported to be a judicial admission. ***Jones v. Constantino***, [631 A.2d 1289, 1293–94 (Pa. Super. 1993)] (finding no admission where "the evidence could be reasonably construed to admit of more than one meaning"). An admission is not conclusively binding when the statement is indeterminate, inconsistent, or ambiguous. ***Dible v. Vagley***, [612 A.2d 493, 499 (Pa. Super. 1992) (finding no admission in a statement in which "pronouns are burdened with ambiguous antecedents, and syntax is opaque" and that "to be an admission, a statement must at least be intelligible [and its] subject matter ... readily determinable"). When there is uncertainty surrounding a conceded fact, it is the role of the judge or jury as fact finder to determine which facts have been adequately proved and which must be rejected.

***John B. Conomos, Inc. v. Sun Co. (R & M)***, 831 A.2d 696, 713 (Pa. Super. 2003) (some citations omitted). "A principle [*sic*] element of a 'judicial admission' is that the fact has been admitted for the advantage of the admitting party." ***Jewelcor Jewelers & Distributors, Inc. v. Corr***, 542 A.2d 72, 76 (Pa. Super. 1988).

The statements within Dr. Mendez's expert report are the opinions of Dr. Mendez and not "clear and unequivocal admission[s] of fact." ***See John B. Conomos, Inc.***, 831 A.2d. at 713. Expert reports, by their very nature, are subject to debate and contradiction by a dueling expert report or other properly admitted evidence. Thus, we agree with the Rayners that the trial court's reliance on Dr. Mendez's expert report to support its decision to grant Koziar post-trial relief was an error.

In light of the foregoing, we find the trial court erred in vacating the jury verdict and granting a new trial. We therefore reverse the trial court's

- 15 -

October 31, 2017 order and remand for the entry of judgment in favor of the Rayners based on the jury verdict entered on September 28, 2017.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/7/18