J-A05039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL HUCHKO AND BERKLEY MID-ATLANTIC GROUP, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BLOUNT INTERNATIONAL, INC., D/B/A, F/K/A, A/K/A, BLOUNT, INC., HYDRO-AX, NATIONAL HYDRO-AX, CATERPILLAR, INC, CATERPILLAR FOREST PRODUCTS, INC., AND BAKER & SONS EQUIPMENT COMPANY | : | No. 1281 WDA 2019 |
| | : | |
| APPEAL OF: BAKER & SONS EQUIPMENT COMPANY | : | |

Appeal from the Judgment Entered August 9, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 15-018552

BEFORE:  BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MARCH 13, 2020**

Baker & Sons Equipment Company (Baker) appeals from the judgment entered in the Court of Common Pleas of Allegheny County (trial court) in favor of Michael Huchko (Huchko) and against Baker in this personal injury case.  We affirm.

This case arose from a May 29, 2014 accident during which Huchko was seriously injured while attempting to enter the cab of a Blount Hydro-Ax 721E

_____

[*] Retired Senior Judge assigned to the Superior Court.

(Hydro-Ax), a multi-purpose tractor weighing in excess of 20,000 pounds. Huchko had been performing clearing and grading work in a field for his employer, Land Clearing Specialists, when he stopped clearing and exited the tractor to refuel and change an attachment. The Hydro-Ax then ran him over causing extensive injury, including several fractures, punctured lungs, spinal cord injuries, nerve injuries in his neck, and a fractured tailbone. Huchko was airlifted from the accident site and he underwent 31 separate operations.

On October 21, 2015, Huchko filed a complaint against Baker and several other defendants[1] alleging, *inter alia*, that Baker was negligent during the course of routine maintenance, repair and/or service on the Hydro-Ax. The complaint provides, in relevant part:

> 15. On May 29, 2014, Plaintiff Michael Huchko was working for Land Clearing and was responsible for performing [] services for his employer on the [] construction site.
>
> 16. Plaintiff parked the Hydro-Ax and engaged the parking break in order to switch the mower hear on the Hydro-Ax.
>
> 17. After exiting the Hydro-Ax, however, it began to move and/or roll in reverse, and during Plaintiff's effort to stop the Hydro-Ax it ran over him causing serious and permanent injuries as set forth more fully herein.

(Complaint, 10/21/15, Paragraphs 15-17).

---

[1] Huchko entered into a settlement agreement with additional defendants Blount International, Inc., Caterpillar, Inc., and Caterpillar Forest Products, Inc., who are not parties to this appeal.

During trial, counsel for Baker made an oral motion *in limine* citing Paragraph 17 of the complaint (Paragraph 17) and asserting that during his deposition testimony, Huchko gave a different version of the facts than he pled in Paragraph 17. (***See*** N.T. Trial, 5/13/19, at 149-50). Counsel argued that Paragraph 17 constituted a judicial admission and asked the trial court to instruct Huchko that he could not testify at trial differently than what is contained in Paragraph 17. (***See id.***). The court denied the motion, finding that counsel was raising "a distinction without a difference." (***Id.*** at 155).

At trial, Huchko testified that he had used tractors from a young age and that he had extensive experience running heavy equipment. (***See id.*** at 197). He explained that on the day of the incident, he finished mowing and pulled the Hydro-Ax over next to the attachment he intended to change. (***See id.*** at 243) Huchko described the accident in detail as follows:

> [Huchko]: I put down pressure on the attachment, I set my brake, my emergency brake, I released my seat belt, then I climbed out of the machine.
>
> [Counsel for Huchko]: Did you turn the machine off?
>
> A. No. I wanted to cool the machine down.
>
> Q. Why did you want to let it cool down?
>
> A. I just ran it for three to four hours straight. I was going to change the attachment in a bit after [I] did my maintenance. And, you know, the fluid would have been way too hot, scalding, to even handle it at that time.
>
> Q. Did you say you took your seat belt off?
>
> A. Yes.

Q. Did you engage the parking brake before you got out?

A. Yes.

Q. Are you sure?

A. Yes. Positive.

Q. Did anything feel wrong about it?

A. It did not.

Q. When you engaged the parking brake did anything happen to the hydraulic or the hydrostatic pedals?

A. They went limp.

Q. Limp?

A. Yes.

* * *

Q. And when you got out of the Hydro-Ax was it moving?

A. No.

Q. Did you have any trouble getting out of the Hydro-Ax?

A. No.

Q. What were you planning on doing?

A. Bringing my truck back, fueling it up.

* * *

Q. What were you going to fill the machine up with?

A. Diesel fuel.

Q. What else were you going to do?

A. Clean the debris off the mower, get it ready to be changed.

- 4 -

Q. So what happened?

A. So as I'm walking back to my truck, I thought I seen movement over my shoulder.  So I turned around and I looked at the machine and I stood there for about a second, two seconds and I'm watching it.  Nothing.  Nothing happening.  It didn't move or nothing.  So I started to go back to the machine, approached the machine, back from where I just come from.  As I approached the machine, still not moving—I haven't taken my eyes off of it—and I reached up to the door.  I grab the right handrail or, yeah, handrail, put my right foot into the lower stirrup, the step.  As I pull myself up, it swings in.  And when it swings in, the door come out.  The step went in, and the door is on hinges.  It started to swing this way.  So it brought me around and made me step down in between the tire and the step with my left foot.  As my foot hit the ground and I went to get my balance again, I heard a clanging sound.  A big loud clang.  Kind of like if you threw your car in park while you are moving.  It clanged, then went click, click.  It was on my foot.  I'm trying to pull my foot out.  I couldn't pull my foot out.  It just kept coming further up.  I felt pressure on my leg, then I fell forward under the machine.  I remember laying on my back looking up.  The last thing before I got—like went black is I seen the pumpkin . . . where all the gears are, going over top of me.  I was on my back at that time.  Then everything went black. . . .

(*Id.* at 245-250).

On May 17, 2019, the jury returned a verdict in favor of Huchko, assigning Baker 75% liability for the accident and Huchko 25% comparatively negligent.  The trial court awarded Huchko delay damages and entered judgment in his favor for $2,494,465.75.  Baker timely appealed, and it and the trial court complied with Rule 1925.  *See* Pa.R.A.P. 1925(a)-(b).

On appeal, the only issue raised by Baker is that the trial court abused its discretion in denying its motion *in limine* to preclude Huchko from testifying at trial at variance with its interpretation of Paragraph 17 of the complaint, as

well as claiming that Huchko's trial testimony contradicted the judicial admission he made in that paragraph. (*See* Baker's Brief, at 9-21). Baker asserts that in Paragraph 17, Huchko unambiguously averred that he was run over while trying to stop a moving tractor, and that, conversely, at trial, Huchko testified that the Hydro-Ax was stationary when he tried to get into it, but that it then began to roll down a slope and ran him over. (*See id*. at 10, 13-14).[2]

To constitute a judicial admission, a statement "must be a clear and unequivocal admission of fact." *Koziar v. Rayner*, 200 A.3d 513, 521 (Pa. Super. 2018) (citation omitted). "Judicial admissions are limited in scope to factual matters otherwise requiring evidentiary proof, and are exclusive of legal theories and conclusions of law." *Id.* (citation omitted).

Furthermore, "[t]he fact must have been unequivocally admitted and not be merely one interpretation of the statement that is purported to be a judicial admission." *Id.* (citation omitted). An admission is not conclusively binding when the statement is indeterminate, inconsistent, ambiguous or could be reasonably construed to admit of more than one meaning. *See id.* "When there is uncertainty surrounding a conceded fact, it is the role of the

---

[2] We note that the "[a]dmission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law." *Carlini v. Glenn O. Hawbaker*, *Inc.*, 219 A.3d 629, 639 (Pa. Super. 2019) (citation omitted).

judge or jury as fact finder to determine which facts have been adequately proved and which must be rejected." *Id.* (citation omitted). A principal element of a judicial admission "is that the fact has been admitted for the **advantage of the admitting party**." *Id.* at 522 (citation omitted). (Emphasis added.) Additionally, it is improper to look at the averment at issue in a vacuum. *See Branton v. Nicholas Meat*, *LLC*, 159 A.3d 540, 557 (Pa. Super. 2017). Instead, the pleading must be viewed as a whole, and the averment must be "viewed in the context of the remaining allegations and damages sought to be recouped." *Id.* (citation omitted).

In this case, as the trial court found, the interpretation of Paragraph 17 advanced by Baker—that Huchko tried to get into the Hydro-Ax while it was moving—is not advantageous at all to Huchko. (**See** Trial Court Opinion, 10/21/19, at 7). Because it is not advantageous to him, the trial court properly found that it was not a judicial admission that precluded him from testifying at trial concerning how he sustained his injuries.

Moreover, viewing Paragraph 17 in the context of the complaint as a whole, we conclude that the statement is not "a clear and unequivocal admission of fact." *Id.* at 521. The paragraph is merely a one-sentence condensed description of the accident that mentioned Hydro-Ax, while in his deposition, Huchko gave an in-depth detailed account of the accident spanning several pages of testimony that included his impression that the Hydro-Ax was moving. Because an admission cannot be just one interpretation of the

J-A05039-20

statement, Paragraph 17 for this additional reason did not constitute a judicial admission to preclude his testimony at trial.

For the foregoing reasons, the judgment is affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/13/2020