J-A30012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW BUSANIC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PREMIER ORTHOPAEDIC & SPORTS | : | |
| MEDICINE PHYSICAL THERAPY | : | |
| | : | No. 852 EDA 2025 |
| Appellant | : | |

Appeal from the Order Entered March 6, 2025
In the Court of Common Pleas of Chester County Civil Division at No(s):
2020-04947-TT

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED APRIL 28, 2026**

Premier Orthopaedic & Sports Medicine Physical Therapy (Premier) appeals from the order, entered in the Court of Common Pleas of Chester County, concluding that the verdict was against the weight of the evidence, granting Appellee Matthew Busanic's post-trial motion, and relisting this professional negligence case for a new trial solely on damages.  We determine that the trial court clearly abused its discretion when it determined that the jury's verdict was so contrary to the evidence that it shocked its sense of justice.  Thus, we vacate and remand for reinstatement of the jury verdict.

In July 2018, Busanic started a course of physical therapy (3x/week for 4 weeks) at Premier after spraining his ankle while running.  At his first appointment, Busanic met with Premier physical therapist Catilin Wilkinson, who performed a series of tests to evaluate the strength of his ankles and developed a set of exercises for him (plan/program).  **See** N.T. Jury Trial,

10/29/24, at 18, 67. At his second appointment, Busanic received instructions on how to implement the plan and was shown "close to ten" exercises under the direction of Premier physical therapist assistant (PTA) Colleen Smith. *Id.* at 21, 78. Busanic testified that Smith followed along with him as he performed each of the exercises to make sure he was doing them correctly. *Id.* at 74. The entire program of exercises took approximately one hour to complete. *Id.* at 78. Smith testified that when she works with patients, if "they are doing the exercise in an incorrect way or [] a way that's likely to injure them" she steps in and changes how they are performing the exercise. *Id.*, 10/30/24, at 120. *See also id.*, 10/29/24, at 81 (Busanic testifying Smith "would have told [him]" if he did not perform an exercise correctly and that he understood all of the movements "to the best of [his] ability"). Smith testified that a physical therapy aide often works with a patient, following them through their plan of care and guiding them through their individualized exercise program. *Id.* at 122. However, even when an aide is working with a patient, Smith testified that she is "always scanning, so if [she] see[s] something being done incorrectly, [she] will always tell [the aide] to stop the exercise [and] will come over and change it." *Id.*

One of the exercises in Busanic's plan required the use of a "TheraBand"—a pre-tied elastic resistance band—that Busanic placed around his foot and held tightly at waist-level while flexing his foot forward and backward while sitting on a treatment table. *Id.*, 10/29/24, at 24-25; *id.*, 10/30/24, at 145. Busanic testified that he was not given any warning by

Premier staff about the risks associated with using the TheraBand, whether the band should not be "bunched up" when placed around his foot, where to position his hands in relation to his body when he holds the band, or where on his foot the TheraBand should be positioned. *Id.*, 10/29/24, at 28. Busanic did the TheraBand exercises[1] approximately five to ten minutes that day. *Id.* at 35.

When Busanic returned to Premier for more therapy on July 31, 2018, Matthew Arizini, a physical therapy aide, took Busanic "from one area of the room to the other and instruct[ed him on] how to do [the exercises] and set [him] up." *Id.* at 34. Busanic testified that Arizini selected the TheraBand he should use, "instructed [him on how] to . . . press [his] toes or [his] foot forward and have it come back," and put the band on his foot before Busanic performed the TheraBand exercise described above. *Id.* at 36. Busanic testified that Arizini handed him the TheraBand and "told [him] to . . . hold it tight" while he described the motions Busanic should perform. *Id.* at 37. Busanic testified Arizini told him to do ten of the exercises, watched him perform "one or two of them, and then he sort of walked away." *Id.* at 38. As Busanic was performing the seventh repetition, he testified that "the band instantly slipped off [of his] foot and hit [him] in the [right] eye." *Id.* at 38;

_____

[1] Busanic was instructed on how to do two different exercises using the TheraBand. He was injured doing an exercise where he flexed his foot, while sitting on a table, using the TheraBand. During the other TheraBand exercise, Busanic put the TheraBand around his ankle and stepped side-to-side on the floor. *Id.* at 24.

- 3 -

*see also* Complaint, 7/30/20, at ¶ 11;[2] N.T. Jury Trial, 10/29/24, at 96 (Busanic testifying band had been placed "around the ball of [his] foot and the instep" right before accident); *id.* at 100.  Busanic testified at trial that he did not know "how or why" the accident happened, but in his deposition testified that he was holding the band with one hand at the time it slipped off, which is how Arizini handed him the band.  *Id.* at 97, 100, 114.  *But see id.* at 104 (Busanic testifying "I have no reason to believe I did anything wrong" when performing band exercise on date of accident).  Finally, on re-direct examination, Busanic testified that he did not "adjust, change, or manipulate how the band was put on [his] foot in any way."  *Id.* at 114.

On August 7, 2018, doctors at Wills Eye Physicians/Mid Atlantic Retina diagnosed Busanic with a sub-retinal hemorrhage and a "severely torn retina . . . with an associated retinal detachment."  Report of Carl Hyunsuk Park, MD, 6/18/21, at 1 (unpaginated).  Busanic required treatment, five eye

---

[2] Busanic's first amended complaint states that at the time he sustained his eye injury he "was performing a resisted planar flexion exercise using a TheraBand at the direction of an unidentified male agent or employee of Premier [] who is believed to have been working under the supervision of Colleen Smith, a physical therapy assistant also employed by [] Premier[.]" Complaint, 9/21/20, at ¶ 9-10.  The record is clear that no one actually saw the band hit Busanic's eye.  Arizini testified that he did not remember working with Busanic on the day of the accident.  *See* N.T. Jury Trial, 10/31/24, at 36-37.  Moreover, Christian H. Mongrain, who prepared Busanic's Certificate of Merit, states that Busanic was injured while "performing resisted TheraBand ankle plantar flexion exercises **under the direction and care of Premier Therapy employee, Colleen Smith, PTA, when the TheraBand slipped off of his right foot and struck [his] right eye.**"  Certificate of Merit, Christian H. Mongrain, PT, DPT, HEM, 8/4/20, at 2 (emphasis added).

surgeries,[3] and has permanent vision loss. Doctor Park, who performed Busanic's first eye surgery, prepared a report that concluded, "to a reasonable degree of medical certainty[,] all of [Busanic's] injuries to [his] right eye (traumatic macular hole, traumatic cataract, severe retinal detachment with proliferative vitreoretinopathy) were due to the impact caused by the **malfunctioned** resistance band, TheraBand, that hit the eye at high velocity/energy." *Id.* at 2 (unpaginated) (emphasis added); *see also* N.T. Jury Trial, 10/29/24, at 85-87.[4]

On July 30, 2020, Busanic filed a complaint against Premier and Hygenic Performance Products, Inc., the manufacturer of the TheraBand. Premier filed preliminary objections to the complaint, claiming, among other things, that the court should strike Busanic's premises liability count where Busanic had improperly "meld[ed] and conflat[ed] a claim of professional liability with a claim for premises liability" after having already filed a certificate of merit. Preliminary Objections, 9/1/20, at 3 (unpaginated). On September 21, 2020, Busanic filed a first amended complaint alleging negligence against Premier and Hygenic and strict liability solely against Hygenic. Busanic's negligence claims against Premier consisted of allegations that Premier: had a duty to act in Busanic's best interest; failed to properly instruct and supervise Busanic

_____

[3] The final eye surgery, a lens implant, was successfully performed at Wills Eye Hospital in October 2019 by Brandon D. Ayres, M.D.

[4] Busanic did not recall telling Dr. Park that the band had malfunctioned, but testified that the band had "slipped off" of his foot. N.T. Jury Trial, 10/29/24, at 88.

on how to safely use the TheraBand while performing an exercise; failed to properly supervise and instruct him that using a TheraBand created a dangerous condition; and **caused Busanic's injuries due to its negligence and/or carelessness**. *See* First Amended Complaint, 9/21/20, at ¶¶ 14-19 (emphasis added).

In his first amended complaint, Busanic lists seven potential reasons Premier was the factual cause of harm to his right eye. Specifically, Busanic alleged that Premier failed to:

- properly supervise Busanic while he used the TheraBand while performing the exercise;

- properly instruct Busanic on how to safely use the TheraBand during the exercise;

- correct Busanic's technique while using the TheraBand before it snapped and struck his eye;

- warn Busanic about the possible dangers of using the TheraBand;

- properly train its agents, servants, and/or employees about how to have patients safely perform TheraBand exercises;

- provide Busanic with eye protection while using the TheraBand; and

- instruct Busanic to "effectively wrap or double wrap or cinch the TheraBand around his foot" to make sure it was properly secured.

*Id.* at ¶ 18(a)-(g). Premier filed an answer and new matter to the first amended complaint, specifically denying that it was negligent and stating that it "did not cause or contribute to any of Plaintiff's injuries" and that its acts "were not substantial causes or factors of the subject incident and/or did not

result in the injuries and/or losses alleged by Plaintiff." Answer and New Matter, 11/25/20, at ¶¶ 12, 15-19, 30.

The case proceeded to a jury trial in October 2024.[5] At the close of Busanic's case, Premier moved for a compulsory non-suit, stating its reasons on the record as follows:

> First, specifically[,] I want to address the issues of underlying negligence in care for the patient. The plaintiff's expert made no claims, no testimony about any individual acts of negligence in care for the patient. The plaintiff's expert made no claims, no testimony about any individual acts of negligence other than instruction and/or supervision during the entire scope of their testimony. In fact, the essence of the testimony was when I specifically asked him, he said, well maybe the band rolled off. We don't know. Maybe it didn't. Maybe it did. We don't know if it rolled up.
>
> The fact that there's absolutely no certainty to that is an indication that there is absolutely no showing [that] has been made by expert testimony of individual negligence of any of the agents of Premier, and, in fact, they testified that the only agents he was talking about was the supervision, which I assume was Colleen Smith, and then the aide who we just heard from, Mr. Arizini. So any claims regarding the actions that were in his report or mentioned, I think need be dismissed along with any underlying incidences.
>
> **The second part of the motion, Your Honor, is with regard to causation**. **There is no testimony from the expert witness that had anything been different or had supervision been different or had somebody been there that there would have been a different outcome.** We hear during the testimony that under the acts, statutes, and regulations, there is no requirement that anybody be next to persons when they do this exercise. That is what Plaintiff's expert

_____

[5] Hygenic was dismissed from the case on March 11, 2024. **See** Praecipe to Settle, Discontinue and End, 8/9/23; **see also** Stipulation to Dismiss, 3/11/24. Thus, the case proceeded to trial with Premier as the sole defendant.

admits.  **If there was an issue where this occurred, nobody testified that this could have stopped it or prevented it. There is no causation argument as far as that goes, Your Honor**.

N.T. Jury Trial, 10/31/24, at 78-79 (emphases added).  The court denied the motion.  **See id.** *a*t 86.

Prior to closing arguments, Premier's counsel moved for a directed verdict "based on the status of the evidence and everything" and incorporating the arguments he made in his motion for nonsuit, including lack of causation. **Id.** at 180.  **See** Pa.R.C.P. 226.  The trial judge denied the motion.  **Id.**

Both Busanic's counsel and Premier's counsel proposed a "factual cause" point of charge for the jury, citing Pennsylvania Standard Jury Instruction (Civ.), 5th Ed. 14.20.  **See also** N.T. Jury Trial, 10/31/24 at 185 (Busanic's counsel, in closing arguments, telling jury judge is going to give them verdict slip asking "basic questions [like] 'Do you find that Premier was negligent?  If you find that Premier was negligent, do you find that [it] w[as] the factual cause of the harm[.]?").[6]

In closing argument to the jury, Busanic's attorney discussed factual causation, among other things, stating:

_____

[6] Busanic's counsel also noted that there was no proposed comparative negligence charge and nothing on the verdict slip regarding comparative negligence. **Id.** at 126-27. He asked the court to preclude Premier's counsel from arguing that Busanic did anything wrong or that he was personally at fault for his injuries or that there was any intervening cause as it related to Busanic's injury. **Id.** at 127-28.  In response, Premier's counsel stated, "I will not argue that.  I may go through what happened and ask the jury to consider how that happened, but I will not say he did it to himself or contributed to the cause." **Id.**

[] You're going to deliberate. And what you're going to do is you're going to have to take the facts and the law as the judge gives you to make decisions. What you're going to hear is you're going to make those decisions based on a preponderance of the evidence. . . .

The judge is going to give you a verdict slip. And that verdict slip is going to guide how you make your decision. You're going to be asked some very basic questions. Do you find that Premier was negligent? If you find that Premier was negligent, **do you find that** [**it was**] **the factual cause of the harm, that** [**its**] **negligence caused the harm?** And then what is the full and fair damages in this case?

***

If you decide that any one of those things is true and you put that on the scale, Premier has been negligent in the treatment of [Busanic]. **If you find that they did not instruct him properly on the exercise <u>and that was</u> [<u>the</u>] <u>factual cause of his injury</u>, that's enough.** If you find that they didn't instruct him right and didn't give him safety instructions, that's enough. If you find that it wasn't the right person, that's enough. It's not an all or nothing proposition.

***

Premier, the company, acting through their employees[,] violated the standard of care by failing to warn, failing to instruct, and failing to have the right person administer [the] right care on the last day. Again, I can't emphasize it enough. It is not an all or nothing proposition. **And then you're going to be asked on the verdict slip if it's the factual cause.** It might seem kind of crazy, but you're going to be asked if they're negligent for the band hitting [Busanic's] eye, **was the band the cause of his injuries? There's been no evidence that anything else was the cause of [Busanic's] injuries.** . . . **That band caused the injury to** [**Busanic's**] eye that led to the follow-up surgeries.

*Id.* at 185-86, 195-96 (emphasis added); *id.* at 236 (Plaintiff's counsel stating to jury, "Busanic is entitled to recover damages for all injuries **factually caused by the defendant's negligence**") (emphasis added).

In its charge to the jury, the trial court gave the following instruction:

The plaintiff has the burden of proving that the following is more likely true than not: **Premier['s] negligence was a <u>factual cause</u> in bringing about the harm suffered by** Matthew Busanic. Matthew Busanic also has the burden of proving the extent of damages caused by Premier[.]

\*\*\*

**The issues you have to decide in the course of the law** as I give it to you are, was Premier [] negligent? And **was Premier['s] negligent conduct a <u>factual cause</u> in bringing about the injuries to Matthew Busanic**? In this case, you must decide whether Premier [] was negligent.

\*\*\*

**In order for Plaintiff [] to recover in this case, the defendant, Premier['s] conduct must have been a <u>factual cause</u> in bringing about harm.** Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual real factor in causing the harm even if the result was unusual or unexpected.

A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection to the harm. **To be a <u>factual cause</u>, Premier[']s conduct need not be the only factual cause.** The fact that some other cause—causes[—]concur with Premier['s] negligence and produc[e] an injury does not relieve Premier [] from liability as long as its own negligence is a factual cause of the injury.

\*\*\*

The fact that I am instructing you on damages does not imply an opinion on my part as to whether damages should be awarded. **If you find the defendant's negligence <u>caused</u> Plaintiff's harm, you must then determine an amount of money damages that you find would fairly and adequately compensate Plaintiff for all the physical harm he has sustained as a result.**

\*\*\*

- 10 -

[] The parties agree that Matthew Busanic sustained some injury from the accident.[7]  **If you find that Premier [] was negligent, you must award damages for the injury in the form of noneconomic damages <u>caused</u> by Premier[']s negligence.**

The parties disagree on the extent of Matthew Busanic's injury caused by Premier['s] negligence.  You must decide the extent of the injury of Premier['s] negligence caused and return a verdict that fully compensates Matthew Busanic for all injuries sustained.

Matthew Busanic is **entitled to recover damages for all injuries <u>factually caused</u> by [Premier's] negligence. [Premier] need not be the sole cause of the injuries**.  Other causes may have contributed to producing the final result.  The fact that some other factor may have contributed to an injury does not relieve a defendant of liability **unless you find that such other causes would have produced the injury complained of independently of their negligence.**

Even though prior conditions or concurrent causes may have contributed to an injury, **if [Premier's] negligence <u>factually caused</u> the injury**, [Premier] is liable for the full amount of damages sustained without any apportionment or diminution for the other conditions or causes.

**If you find that Premier['s] negligence <u>caused</u> Matthew Busanic harm**, he is entitled to recover past and future money damages for the following types of harm, each of which I will describe in some detail.

*Id.* at 231, 234-37 (emphasis added).  Relatedly, the verdict slip submitted to the jury, which both parties agreed to, included the following relevant language:

1.  Do you find the Defendant, Premier Orthopaedic & Sports Medicine Associates, Ltd., was negligent?

_____

[7] The issue of degree of an injury is addressed through damages once factual cause is established.  Thus, because the jury determined that Premier was not the factual cause of harm to Busanic, it never addressed the degree or extent of his injuries.

\*\*\*

**If you answered "Yes[,]" go to Question 2.**

If you answered "no[,]" the Plaintiff cannot recover, and you should not answer further questions. The foreperson should sign and date the last page of the verdict slip and tell the court officer that you have reached a verdict.

2. **Was the negligence** of those defendants you have found to be negligent **a factual cause of any harm to the plaintiff**?

\* \* \*

If you answered "Yes[,]" go to Question 3.

**If you answer Question 2 "No"** as to all defendants you have found to be negligent, **the plaintiff <u>cannot recover</u> and you should not answer any further questions and should return to the courtroom**.

Verdict Slip, 10/31/24, at 1 (emphasis added).[8] Neither party objected to the

jury instructions. **See Passarello v. Grumbine**, 87 A.3d 285, 292 (Pa. 2014)

(objections to jury instruction must be made before jury retires to deliberate).[9]

---

[8] Queston three of the jury verdict form, which was left blank by the jury, reads as follows:

> 3. State the amount of damages, if any, sustained by Plaintiff, Matthew Busanic.
>
> $_____

**Id.** at 2. Busanic's counsel also read the verdict slip, verbatim, to the jury in his closing arguments. **See supra** at 9-11. Notably, he reiterated that if the jury answered "no" to the second question (factual causation), "the plaintiff cannot recover [and the jury] should not answer any further questions." N.T. Jury Trial, 10/31/24, at 243.

[9] Prior to the jury rendering its verdict on October 31, the jury foreperson asked the judge the following questions: "May we see the standard of care? Articles that were shown. 9.2, 40.32, & 40.50" and "Can we see the 2 definitions of negligence again?" **See** Court Exhibit 1, 10/31/24; Court Exhibit
*(Footnote Continued Next Page)*

After a four-day trial, the jury returned a verdict that found Premier was negligent, but that its negligence was not a factual cause in bringing about harm to Busanic. **See** Verdict Slip, 10/31/24, at 1. Consequently, the jury awarded no damages. **See id.** at 1-2 (verdict slip stating if jury found Premier was not factual cause of harm, Busanic "**cannot recover**;" amount of damages question left blank and slip signed and dated by jury foreperson) (emphasis added). Prior to the court being adjourned, Busanic's counsel put the following objection on the record:

> [W]e believe the jury has just rendered what's considered an inconsistent verdict. Meaning, when they found negligence, but not factual cause[,] it contradicts all the evidence of record and is inconsistent with the kind of verdict slip given the facts of the case because there's no doubt that our client was injured at the physical therapy facility and that his injury is caused by their negligence.

_____

2, 10/31/24. The court responded to the questions by sending the following to the jury: "The jury is to rely on the instructions given by the court both during the charge and again in response to the jury's first question." Court Exhibit 3, 10/31/24. At 9:08 p.m. that evening, Premier's counsel moved for a mistrial "[o]n the basis that [the jury didn't] seem to be making any progress . . . [and to avoid] a jury [from] just mak[ing] a decision to avoid coming back tomorrow or to get it done for the purpose of getting it done." N.T. Jury Trial, 10/31/24, at 254-55. **See also id.** at 255 (defense counsel stating concern that jury would "throw any reason to the wind and make a decision that's inappropriate for this case for either side on causes or reasons other than . . . the right reasons"). Busanic's attorney opposed the motion, stating that the court had not been given any indication that the jury was deadlocked and that there were alternate jurors available in the event they were to lose some jurors to vacation. **Id.** at 255-56. The court agreed with Busanic's counsel, concluding that there had been no indication the jury was deadlocked, and, thus, denied the mistrial motion. **Id.** at 256.

N.T. Jury Trial, 10/31/24, at 261-62.[10]  The court noted counsel's objection and advised him that he would have an opportunity to file post-trial motions. *Id.* at 262.

Busanic filed post-trial motions requesting a new trial on the issue of damages, claiming that the jury's verdict that Premier's negligence was not a factual cause in bringing about harm to Busanic was:  inconsistent with its finding that Premier was negligent; not supported by the evidence; against the weight of the evidence; shocking to one's conscience; contrary to caselaw; and "against the [c]ourt's instructions to the jury."  Plaintiff's Motion for Post-Trial Relief, 11/8/24, at ¶ 5.  On March 6, 2025, the trial court granted Busanic's motion and awarded a new trial on damages.  Premier filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

On appeal, Premier raises the following issues for our consideration:

(1)    Whether the trial court committed an error of law and/or abused its discretion when it granted [Busanic] a new trial on damages and found that [Premier] did not dispute causation?

(2)    Whether the trial court committed an error of law and/or abused its discretion when it granted [Busanic] a new trial

---

[10] Our Supreme Court has stated that "an inconsistent verdict provides grounds for objection and, if a party seeks relief upon grounds of verdict inconsistency, it must forward a timely, contemporaneous objection upon the rendering of the verdict."  *Criswell v. King*, 834 A.2d 505, 513 (Pa. 2003).  However, because a weight of the evidence claim "ripens only at the post-verdict stage," such claim is "properly forwarded for the first time in a timely-filed post-trial motion."  *Id.*

and found that the jury charge required the jury to award damages and that the jury failed to follow instructions?

(3) Whether the trial court committed an error of law and/or abused its discretion when it found the verdict was against the weight of the evidence?

(4) Whether the trial court committed an error of law and/or abused its discretion when it failed to find that [Busanic] waived his challenge to the verdict on the grounds that the jury failed to follow instructions?

Appellant's Brief, at 4.

The applicable standard of review of [a trial] court's decision to grant a new trial is as follows: The decision of whether to grant a new trial is within the sound discretion of the trial court. An appellate court will not disturb the trial court's decision unless the trial court palpably abused its discretion or committed an error of law. In evaluating an order awarding a new trial, an appellate court keep[s] in mind that a new trial is warranted where the jury's verdict is so contrary to the evidence as to shock one's sense of justice. However, a new trial should not be granted because of a mere conflict in testimony or because the trial judge, on the same facts, would have arrived at a different conclusion.

*Andrews v. Jackson*, 800 A.2d 959, 962 (Pa. Super. 2002) (citation

omitted). Moreover,

[under common law, t]he granting of a new trial limited to damages was not permitted[.] *Troncatti v. Smereczniak*, [] 235 A.2d 345[, 346] ([(Pa.)] 1967). However, Pennsylvania and most other jurisdictions have adopted a rule permitting such limited new trials under specific circumstances. A new trial limited to the issue of damages will be granted where: (1) the issue of damages is not "intertwined" with the issue of liability; and (2) [] the issue of liability has been "fairly determined" or is "free from doubt." *Gagliano v. Ditzler*, [] 263 A.2d 319[, 320] ([(Pa.)] 1970).

*Kiser v. Schulte*, 648 A.2d 1, 7-8 (Pa. 1994) (some citations omitted).

Our Supreme Court has recognized that there is a significant distinction

between the grant of a new trial on the basis of an inconsistent verdict versus

one upon the weight of the evidence. In the former, the challenge disputes the power of the jury to render the verdict and does not allege any facial error in the jury's verdict. The latter challenge derives from the fact that the trial court, like the jury, had an opportunity to hear the evidence and observe the demeanor of the witnesses and concludes that the verdict was so contrary to what it heard and observed that it will deem the jury's verdict a miscarriage of justice. **Criswell**, 834 A.2d at 512. **See Hobbs v. Ryce**, 769 A.2d 469, 472, n.3 (Pa. Super. 2001) (citation omitted) ("A trial judge is not at liberty to suggest to the jury that the weight of the evidence did not support its damage award.").

Here, the trial court concluded that the verdict was against the weight of the evidence presented at trial because the jury failed to find factual causation when only negligence was contested. We note that such a holding is "[o]ne of the least assailable" for an appellate court. **Fazio v. Guardian Life Ins. Co. of America**, 62 A.3d 396, 413 (Pa. Super. 2012) ("Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.").

When reviewing an order granting a new trial, "if . . . the trial court indicates that the reasons it gives are the only basis for which it ordered a new trial[,] . . . an appellate court can only examine the stated reasons." **Morrison v. Dep't of Pub. Welfare**, 646 A.2d 565, 570 (Pa. 1994) (internal

quotations omitted). Instantly, the court stated it granted a new trial on damages for the following reasons: (1) Premier contested only negligence and not causation, and (2) the court instructed the jury that "it *must* award some damages upon a finding of negligence." ***See*** Trial Court Memorandum Opinion, 3/6/25, at 1 (emphasis added).

Here, contrary to the court's conclusion, Premier never stipulated or conceded negligence, causation, or damages. The trial court's conclusion that causation was not contested—because "the parties did not dispute that Plaintiff's eye injury was caused by the TheraBand slipping off Plaintiff's foot after it had been placed on his foot by Mr. Arinzini" and where Busanic's "treating surgeon and expert . . . opined to a reasonable degree of medical certainty that all the injuries to Plaintiff's right eye [] were due to the impact caused by the malfunctioned resistance band that hit the eye at high velocity"—conflates *how* Busanic sustained his injury with the *factual* or *actual* cause of Busanic's injury. Trial Court Memorandum Opinion, 3/6/25, at 4-5. The latter finding, necessary to impose liability in any negligence action, requires "a demonstration that the breach of duty was *both* the proximate cause and actual cause of [the] injury." ***Eckroth v. Pennsylvania Elec., Inc.***, 12 A.3d 422, 427 (Pa. Super. 2010) (emphasis added). Although Premier may have conceded that the accident caused some injury to Busanic, Premier contends that "[a]greeing that the accident caused injury" is not the same as agreeing that its negligence was the factual cause of the accident. Appellant's Pa.R.A.P. 1925(b) Statement, 4/14/25, at 2, citing ***Hamil v.***

**Bashline**, 392 A.2d 1280, 1284 (Pa. 1978). **See Martin v. Evans**, 711 A.2d 458, 461 (Pa. 2988) (mere occurrence of accident does not establish negligent conduct).

The trial court posits that, where medical experts for both sides agree that a plaintiff's accident caused some injury, a jury's verdict that defendant's negligence is not a substantial factor in causing plaintiff's injury is contrary to the weight of the evidence. **See** Trial Court Memorandum Opinion, 3/6/25, at 2.[11] It is true that a jury is not permitted to disregard uncontroverted evidence of causation and find a defendant's negligence was not a substantial factor in causing at least some injury to plaintiff, where both parties agree that a plaintiff sustained some injury as a result of an accident. **Andrews**, 800 A.2d at 965. However, here the parties are not disputing whether Busanic was injured when the TheraBand slipped off his foot and struck him in the right eye. Instead, the dispute was whether Premier's negligence *caused* the accident that resulted in Busanic's injury. Premier asserts that it *did* contest causation. We agree.

It is well established that:

> To prevail in any negligence action, the plaintiff must establish the following elements: the defendant owed him or her a duty[;] the defendant breached the duty[;] the plaintiff suffered actual harm[;] and a causal relationship existed between the breach of

---

[11] Busanic's counsel's statement to the jury that "[it] might seem kind of crazy, but you're going to be asked if [Premier] is negligent for the band hitting Matthew's eye, **was the band the cause of his injuries,**" is also misleading. N.T. Jury Trial, 10/31/24, at 196. While the band indisputably was the mechanism that caused the injury, as we discuss *infra*, that is not the same as factual causation.

duty and the harm. **To establish the causation element in a professional malpractice action, the plaintiff must show that the defendant's failure to exercise the proper standard of care caused the plaintiff's injury.**

***McFeeley v. Shah***, 226 A.3d 582, 594-95 (Pa. Super. 2020) (emphasis added). Here, Premier presented expert testimony on the breach of duty element to support its defense that it did not deviate from the standard of care required of professionals in the physical therapy field when it rendered care to Busanic. Therefore, while there was no dispute that the TheraBand was the direct cause of the injury to Busanic's eye, Premier contested the **factual** causation, or actual ("but for" or "cause in fact") cause of the harm suffered. ***See*** N.T. Jury Trial, 10/31/24, at 132 (defense counsel acknowledging "[t]he cause of the injury was the band hitting the eye, right. Nobody disputes that."); ***id.*** (defense counsel stating, "Nobody is arguing causation as to **when** there was trauma to the eye.") (emphasis added).

Notably, Premier moved for a compulsory non-suit and directed verdict on the basis of causation, claiming that no expert testified that even if someone at Premier had been supervising Busanic at the time the band slipped off of his foot, he would not have been injured. ***See*** N.T. Jury Trial, 10/31/24, at 78-79, 180. Additionally, on cross-examination of defense witnesses Smith and Wilkinson, Busanic's counsel mentioned the risks of TheraBands "potentially slipping off or tearing or breaking." ***Id.*** at 10/30/24, at 229-30. Smith also testified that Premier routinely checks the bands for "wear and tear" and discards any bands that could increase "a chance of injury." ***Id.*** at

121.[12]  Moreover, both Smith and Busanic's expert, Christian Mongrain, PT,

DPT, HEM, testified that TheraBands can roll up, scrunch up, or come up too

high on the foot.  **See** N.T. Jury Trial, 10/30/24, at 6, 143.

Therefore, even though the jury may have determined that Premier was

negligent[13]—i.e., that it failed to use the ordinary care or skill of a person in

_____

[12] Busanic's expert, Christian H. Mongrain, testified extensively on the relevant portions of Pennsylvania's Physical Therapy Practice Act (Act) that discussed what types of things physical therapists and physical therapy assistants may delegate to support personnel like Arizini.  **See** N.T. Jury Trial, 10/30/24, at 3-8.  However, his initial expert report did not mention the Act at all.  Mongrain testified that "the standard of care of physical therapy" was violated if a therapist or assistant "delegate[d] to an aide the observance and correction of a patient [during skilled therapy] doing exercises [and also] to delegate to an aide the responsibility to warn patients about safety concerns and risks with certain exercise equipment like exercise bands."  **Id.** at 6. Doctor Mongrain also testified about the concerns when using a TheraBand, such as "rolling up or scrunching up or coming up too high on the foot."  **Id.**

[13] The judge defined negligence to the jury as follows:

> A person must act in a reasonably careful manner to avoid harming others.  The **care** required varies according to the circumstances and the degree of danger at a particular time.  You must decide how a reasonably careful person would act under the circumstances established by the evidence in this case.
>
> A person who does something a reasonably careful person would not do under the circumstances is negligent.  A person can also be negligent by **failing to act**.  A person who fails to do something a reasonably careful person would do under the circumstances is negligent.
>
> Professional negligence is a negligent, careless, or unskilled performance by a physical therapist of the duties imposed by them via a professional relationship with a client.  Negligence is the **failure to use the ordinary care or skill of a person in that profession**.  A professional must have the same knowledge and skill and use the same care normally used in the profession.  **The**

*(Footnote Continued Next Page)*

the physical therapy profession—in order to be entitled to damages, the plaintiff was still required to prove that the negligence was the factual cause of harm. *Cf. Winschel v. Jain*, 925 A.2d 782 (Pa. Super. 2007) (verdict against weight of evidence where jury concluded physician was negligent, but that his negligence was not cause of decedent's death; plaintiff established element of causation with uncontradicted expert testimony that physician's failure to diagnose totally obstructed artery clearly increased risk of fatality and led to plaintiff's death).

The cases cited by the trial court[14] to support its decision to grant a new trial on damages all involve negligence cases in which the plaintiff sustained injury as a result of a motor vehicle accident.[15]  While this distinction may seem inconsequential in the overall scope of causation in negligence cases, our Court in *Daniel v. William R. Drach Co.*, 849 A.2d 1265 (Pa. Super. 2004), recognized the following nuance, which applies equally to the instant matter:

_____

> **professional whose conduct falls below the standard of care is negligent.**

N.T. Jury Trial, 10/31/24, at 233-34 (emphasis added).  Therefore, the term "negligence," as presented to the jury, encompassed the elements of duty and breach (i.e., defendant's conduct fell below standard of care).

[14] Notably, Busanic cited to the same cases in his post-trial motion for a new trial.

[15] One of the cases, *Martin*, *supra*, involved a tractor trailer hitting a man standing behind the truck at a rest stop.  In any event, a vehicle was the cause of the plaintiff's injuries.

[T]hese [motor vehicle] cases are distinguishable from the case now before us.  In **Andrews** and the other cases that Appellants cite, the jury's finding of negligence established that the negligent operator of the vehicle caused the collision.  Whereas those juries' findings on negligence established that the drivers were liable for causing the collision, the jury's decision in this case that Appellee was negligent did not establish that its negligence caused the alleged accident in which [plaintiff] injured himself.  This is so because[,] when an auto accident occurs and one driver is found to be negligent, then absent contributory negligence, the driver's negligence is almost invariably what caused the auto accident.  And therefore, if there is an uncontroverted injury that arose from the auto accident, the jury must find that the driver's negligence, which caused the accident, was also a substantial factor in causing the injury.

However, **we do not extrapolate from this case law that**[,] **regardless of the factual circumstances, a finding of negligence combined with an uncontroverted injury automatically requires a finding that the negligence was a substantial factor in causing the accident  that caused the injury.**  Rather, the aforementioned case law is limited to a jury's finding on whether the plaintiff was "injured" in the accident. **Andrews**, 800 A.2d at 965.  Appellants herein have misplaced their reliance, as they are not here arguing about whether [plaintiff] was injured in the accident, for this issue is not in dispute.

**Instead, the issue is whether *Appellee's negligence caused the accident* that resulted in the injury.**  The jury found that it did not, and the trial court concluded that the jury's verdict was proper.  As Appellee argues in its brief, there are other factors that may have caused [plaintiff's] accident, among which may have been his own actions.

**Id.** at 1268-69 (quotation marks omitted) (emphases added).  **See also**

**Koziar v. Rayner**, 200 A.3d 513 (Pa. Super. 2018) (trial court erred in

vacating jury verdict and granting new trial where jury could have found

defendants negligent, but ultimately did not believe it was defendant's

negligence that caused plaintiff's injuries; rather, the jury could have found

the injury resulted from her own negligence or might not have believed plaintiff's version of how accident happened).

After due consideration of the evidence, viewed in a light most favorable to Premier as the verdict winner, we conclude that the jury could have reasonably reached the conclusion it did—that Premier was negligent, but not the factual cause of Busanic's injury. *Winschel*, *supra*. As Premier's counsel argued in his motion for nonsuit, no expert[16] testified that even if Wilkinson, Smith, or Arizini had been supervising Busanic at the time he completed his seventh repetition of the TheraBand exercise on July 31, 2018, he would not have been injured. In fact, no one could explain exactly how or why the band slipped off Busanic's foot and injured his eye. *See Gaita v. Pamula*, 122 A.2d 63 (Pa. 1956) (well-established principle that jury is free to believe or disbelieve opinion evidence presented by expert witness). Thus, we find the trial court erred in granting a new trial on damages on the basis that causation was not contested at trial.

Moreover, the jury *did* follow the court's instruction and did not proceed to award damages after concluding Premier's negligence was not the factual

_____

[16] At most, Mongrain's pre-trial expert report, entered as an exhibit at trial, stated that Premier's "abandonment of duties . . . created a dangerous condition that **caused or contributed to [Busanic's] compromised health, safety, and well-being**." Expert Report, 12/22/22, at 4 (emphasis added). *See id.* at 14 ("actions or inactions of Premier . . . violated the standard of care for physical therapy and created a dangerous condition that caused [] Busanic's eye injury."), *but see id.* ("Had [] Busanic been provided with the skilled therapy services that he was charged for . . . **he more likely than not** would have completed the exercises without injury.") (emphasis added).

cause of Busanic's harm. Here, the parties agreed not only to the trial court's jury instruction that the jury could only award damages if it first concluded that Premier's negligence factually caused the harm to Busanic, but they also agreed on the wording of the jury's verdict slip mandating that if the jury does not find Premier was a factual cause of any harm to Busanic, it shall not award damages. **See** Verdict Slip, 10/31/24, at 1. Thus, to the extent that the court also found that the jury did not follow the trial court's instructions, we determine that finding to be in error. **See Farese v. Robinson**, 222 A.3d 1173, 1184 (Pa. Super. 2019) (It is well-established that "the jury is presumed to follow the trial court's instruction") (citation omitted). **See also** Appellant's Brief, at 17 (Premier pointing out trial court's instructions "make it clear that, not only was causation never conceded by Defendant, [but] the jury was required to follow instructions in answering the question on causation on the verdict slip").

In conclusion, we find that in the instant case, liability was fairly determined by the evidence.[17] **See Kaiser**, **supra** (issue of liability must

_____

[17] Both the trial court and Busanic rely heavily on an unpublished memorandum decision, **Boyle v. Einstein Med. Ctr. Montgomery**, 227 A.3d 418 (Pa. Super. 2020) (Table), to support the grant of a new trial on damages on the basis that the jury failed to follow the trial judge's instructions by not finding factual causation, and, in doing so, rendered a verdict that is against the weight of the evidence. **See** Trial Court Memorandum Opinion and Order, 3/6/25, at 7-8; **see also** Appellee's Brief, at 10-11; Plaintiff's Brief in Support of Motion for Post-Trial Relief, 12/12/24, at 5-8. For many reasons, that case is inapposite to the instant facts and, does not support the grant of a new trial on damages.

*(Footnote Continued Next Page)*

_____

In **_Boyle_**, the plaintiff underwent right knee replacement surgery at Einstein Medical Center in Montgomery County (Einstein). The day after surgery, the plaintiff fell when she used the bathroom in her recovery room, having been left unassisted by a physical therapist. **_Id._** As a result of the fall, plaintiff's surgical wound opened "all the way down to the implants [and caused] a significant tear or rupture of plaintiff's patellar tendon and medial and lateral retinaculum." 227 A.3d at *2. Plaintiff was placed in a locked, hinged knee brace for six weeks to allow the tendon to heal. **_Id._**

Plaintiff sued Einstein for negligence, contending that the physical therapist was negligent (i.e., breached the standard of care) for not taking plaintiff back to her bed to use a bedpan, but, instead, taking her to a bathroom that was not equipped with a toilet she could use, failing to summon a same-sex staff member to assist plaintiff in the bathroom, and instructing her to use a bedpan while standing alone and unassisted. At trial, the plaintiff's claim of negligence focused on whether Einstein's physical therapist breached the relevant standard of care. While the parties did not dispute how the plaintiff injured herself—falling after she lost her grip on her walker while standing and trying to use a bedpan in a bathroom—the parties disagreed on the "precise nature of the [plaintiff and physical therapist's verbal exchange] with one another" in the recovery room bathroom just before the fall.

While Einstein stated that it did not "concede" any of the elements of negligence, the facts clearly bore out that duty and breach were "hotly" contested at trial. Moreover, the extent of plaintiff's injuries, complicated by her past medical history, was also contested. The jury was instructed that the parties had agreed that plaintiff suffered some injury and that "if you find that the defendant was negligent, you must award the plaintiff some damages for those injuries that were sustained as a result of the defendant's negligence." **_Id._** at *3. However, the jury also found that Einstein's negligence was not a factual cause of the plaintiff's injuries and awarded no damages. **_Id._**

Ultimately, the trial court concluded that "factual causation" was not reasonably disputed by the parties and, thus, a new trial on damages was required where the jury's verdict was against the weight of the evidence. On appeal, our Court focused on the testimony of one of Einstein's experts to conclude that liability had been fairly determined in the case. Specifically, our Court found that Einstein "did not reasonably challenge causation at trial" where Einstein's own medical expert established that plaintiff's fall resulted in some injury, requiring emergency surgery.

_(Footnote Continued Next Page)_

have been "fairly determined" or "free from doubt" to grant new trial *limited to damages*). While the jury may have believed that Premier breached its duty of care (i.e., it was negligent), Busanic still had the burden of establishing that Premier's conduct proximately caused actual harm to him. ***See Martin***, 711 A.2d at 502 (citation omitted). By granting a new trial on damages, the trial court inappropriately invaded the province of the jury where none of Busanic's experts testified that Premier's negligence (breach of duty) **actually caused** Busanic's injuries. ***See Kravinsky v. Glover***, 369 A.2d 1349, 1356 (Pa. Super. 1979) ("Expert testimony is admissible when, **taken in its entirety**, it expresses reasonable certainty that the accident was a substantial factor in bringing about the injury.") (emphasis in original) (citation omitted). Indeed, Busanic, himself, testified he did not know "how or why" the accident happened.

Plaintiff's expert, Dr. Park, an expert in ophthalmology, testified about the injury Busanic sustained to his right eye as a result of the TheraBand accident. Specifically, in his deposition, Dr. Park discussed the physical injuries Busanic sustained, the fact that the injuries were caused by a

---

Notably, in **Boyle**, our Court recognized that "[t]he trial court did not hold that Einstein conceded the issue of causation." ***Id.*** at *14. By contrast, in the instant matter the trial court specifically granted a new trial based on the reason that it found **Premier did not contest causation**. ***See*** Trial Court Memorandum Opinion, 3/6/25, at 1 (emphasis added); ***see also Morrison***, ***supra*** (appellate court must confine review to reasons trial court gave for ordering new trial). Moreover, unlike the facts in **Boyle** where there was no reasonable dispute by the parties of "the causative link between Ms. Boyle's injuries and her fall," here, Premier never admitted that there was any link between Premier's actions and Busanic's injuries. ***See id.*** at *14-15.

malfunction of the TheraBand, the numerous medical and surgical treatments Busanic underwent to repair his eye, Dr. Park's opinion that Busanic will not regain full functional vision in his right eye, and the need for follow-up care for the foreseeable future.  *See* N.T. Jury Trial, 10/29/24, at 88 (on cross-examination of Busanic, defense counsel referencing Dr. Park's expert report that stated, "It's my opinion expressed to a reasonable degree of medical certainty that all of the injuries to the eye . . . were due to impact caused by the malfunctioned resistance band.").

Plaintiff's expert, Christian Mongrain, an expert in physical therapy, testified primarily on how Premier allegedly violated its standard of care by not ensuring that Busanic was adequately supervised by qualified staff (not an aide) when performing his exercises on the date of the accident.  *See* N.T. Jury Trial, 10/30/24, at 89-92. *See also* Expert Report by Christian Mongrain, 12/22/22, at 14 (stating "Busanic was injured because the physical therapy staff failed to ensure that he used the TheraBand in a manner that was consistent with the standard of care"); *id.* at 4 (causation section of Mongrain's report stating Premier's "abandonment of duties . . . created a dangerous condition that caused or contributed to his compromised health, safety, and well-being"); *id.* at 14 ("actions or inactions of Premier . . . violated the standard of care for physical therapy and created a dangerous condition that caused [] Busanic's eye injury"); *id.* ("Had [] Busanic been provided with the skilled therapy services that he was charged for . . . **he more likely than not** would have completed the exercises without injury.")

(emphasis added). ***But see Eaddy v. Hamathy***, 694 A.2d 639, 642 (Pa. Super. 1997) (plaintiff's expert fails standard of certainty if he testifies "that the alleged cause 'possibly[,']' or 'could have' led to the result, that it 'could very properly account' for the result, or even that it was 'very highly probable' that is caused the result").

On the other hand, Premier's expert defended the case by arguing that "at all times [Premier] compl[ied] with the standard of care in the treatment of Busanic" and opined in her expert report, which was entered into evidence, that "the events of 7/31/18 were an unfortunate accident." N.T. Jury Trial, 10/31/24, at 102; Report of Sandra L. Campbell, PT, PhD. MBA, 3/7/23, at 4, 111.[18] ***See also*** N.T. Jury Trial, 10/30/24, at 164 (Premier physical therapy assistant Smith testifying she scans gym at all times to make sure patients doing exercises correctly with aides, it is common practice in therapy practices that aides follow patients as they do exercises, and that "it was unfortunate what happened to [Busanic]"). Doctor Campbell testified that, "to a reasonable degree of professional certainty," she believed that this was a "bad outcome [that] happen[ed] without somebody being negligent." ***Id.***, 10/31/24, at 101, 123-24. Moreover, on re-cross examination, Doctor Mongrain, plaintiff's expert, also agreed that "in physical therapy you can have bad outcomes without negligence." ***Id.***, 10/30/24, at 109-10.

_____

[18] Additionally, no one testified that the aide placed the band on Busanic improperly prior to the accident.

In cases where both parties' experts do not agree that the defendant's negligence was the actual cause in bringing about the harm to plaintiff, the issue of factual cause must go before a jury. *Straw v. Fair*, 187 A.3d 966 (Pa. Super. 2018). Here, the jury was properly tasked with determining that issue. *See First v. Zem Zem Temple*, 686 A.2d 18, 21 n.2 (Pa. Super. 1996) (In Pennsylvania, a negligent act is a cause-in-fact of the plaintiff's injuries "if the harmful result would not have come about but for the negligent conduct."); *see also Eckroth*, *supra* at 427 ("Even with proof of both breach of duty as prescribed under statute and the occurrence of injury . . . [Plaintiffs] were still obligated to show the two were linked by causation [which included] a demonstration that the breach of duty was **both the proximate cause and actual cause** of injury[.]") (citations omitted) (emphasis added). Even though defense counsel did not argue contributory negligence, the jury was free to infer that, based on the evidence, other factors may have caused Busanic's accident. *See Daniel*, *supra*; *Koziar*, *supra*.

Because the jury's verdict was not so contrary to the evidence to shock one's sense of justice, the trial court abused its discretion in granting a new trial. *See Thompson v. City of Philadelphia*, 493 A.2d 669 (Pa. 1985). In so finding, we acknowledge that the trial court's decision to grant a new trial on weight of the evidence grounds is "[o]ne of the least assailable" by an appellate court. *Fazio*, *supra*. However, we also recognize that the "narrowly circumscribed" power to grant a new trial is only permitted where the judicial conscience is actually "shocked," and not merely disappointed or

uncomfortable.  ***Criswell***, ***supra*** at 512-13 (power to grant new trial narrowly circumscribed "because of the obvious tension between the broad, settled, exclusive role of the fact-finder in assessing credibility and the limited power of trial judges . . . to overturn those assessments").

Order vacated.  Case remanded for reinstatement of the jury verdict. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/28/2026</u>